WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods LLP, an Arizona limited liability partnership dba HBI International,<br><br>Plaintiff,<br><br>v.<br><br>Juicy eJuice, a Canadian Business Entity; Vapour Limited, a Seychelles Business Entity; et al.,<br><br>Defendants. | No. CV-13-00070-PHX-GMS<br><br>**ORDER** |

Pending before the Court are separate Motions to Dismiss from Defendants Nikki's Vapor Bar, USA, Inc. (Doc. 55) and 1673030 Alberta, Inc. (Doc. 57). Also before the Court is Plaintiff's Motion for Leave to File Supplemental Responses to the Motions to Dismiss. (Doc. 81.) For the reason set forth below, the Motion for Leave is denied and the Motions to Dismiss are both denied.[1]

**BACKGROUND**

The Plaintiff, BBK Tobacco & Foods LLP ("BBK"), sells a variety of smoking related products on its website including the liquid used in electronic cigarettes to create vapor. BBK uses multiple trademarks, many of which incorporate the word "JUICY" as

---

[1] The parties' requests for oral argument are denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

an element such as JUICY JAYS and JUICY DROPS. Some of these trademarks are registered with the United States Patent and Trademark Office ("USPTO"). BBK alleges that Defendants have engaged in trademark infringement, trade dress infringement, and unfair competition.

Defendant Nikki's Vapor Bar, USA, Inc. ("Nikki's Vapor") sells similar products under the name JUICY EJUICE on its website. Nikki's Vapor is a Florida based company that is incorporated in Delaware. It has no physical storefront but its website is accessible from anywhere, including Arizona, and it allows customers to order and have products shipped to Arizona. Arizona is one of many options available to select in a drop-down menu that customers use to enter their mailing address. Nikki's Vapor declares that "through its website, [it] has not sold any Juicy eJuice products in Arizona nor has Nikki's shipped any Juicy eJuice products to Arizona." (Doc. 56-1.) The website invites visitors to contact Nikki's Vapor for franchising opportunities. The website also has a Terms and Conditions that govern the use of the site.

Defendant 1673030 Alberta, Inc., ("Alberta") is a Canadian company. BBK alleges that Alberta sells electronic smoking devices using the word mark JUICY ESTICK and the e-liquids used in such devices. (Doc. 32 ¶¶ 95–96, 146.) BBK alleges that one of the places where Alberta sells its e-liquids and e-sticks is on the JUICY EJUICE website, JuicyeJuice.com. (*Id.* ¶¶ 101, 113.) Alberta points out that the website JuicyeJuice.com is not registered to Alberta (Doc. 71 at 2), but also acknowledges that it "conducts sales transactions through websites where customers from around the world can purchase its products." (Doc. 57-1 at 2). Alberta admits that it has sold products to customers in Arizona, but states that in the past year those sales were "less than a third of one percent of its online sales." (*Id.*) BBK had a copy of the Second Amended Complaint served or delivered to Alberta's registered office in Canada. (*Id.*)

The online presence, marketing, and sales operations of Nikki's Vapor and Alberta are interconnected. The website for Nikki's Vapor, NikkisVaporBar.com, is actually registered to another defendant in this case, Vapour Ltd. ("Vapour"). (Doc. 55 at 2.) The

website JuicyeJuice.com, where Alberta's products are sold, is also registered to Vapour. (Doc. 32 at 12.) When a customer signs up for emails on JuicyeJuice.com, the customer will receive promotional emails listing the name and address of Nikki's Vapor. (Doc. 59-1) Those emails originate from a third website, eStick.com, but they link customers back to the website for Nikki's Vapor. When a customer purchases an Alberta product on JuicyeJuice.com, that customer then receives email confirmations and updates from the third website, eStick.com. (Doc. 66-1.) The charge on the order from JuicyeJuice.com is listed on the credit card statement as being from "NIKKI'S LIQUID" and the product ordered arrives from the Florida address of Nikki's Vapor. (*Id.*)

The management and ownership of Nikki's Vapor and Alberta also overlap. Allan Mackintosh is the Chief Operating Officer of Nikki's Vapor. (Doc. 56-1.) Trevor Westlake is a Director of Alberta. (Doc. 57-1.) Allan Mackintosh and Trevor Westlake are the only two voting shareholders for Alberta, each with a fifty-percent share. (Doc. 69-1 at 18.) Mackintosh declares that Nikki's Vapor is incorporated in Delaware and has a principle place of business in Florida, but he signed that declaration and had it notarized in Canada. (Doc. 56-1.) Westlake declares that Alberta is incorporated and has its principle place of business in Canada, most of its employees are "located" in Canada, and it has no offices in America, but he signed that declaration and had it notarized in Florida. (Doc. 57-1.) Nikki's Vapor and Alberta are both represented by the same counsel in this lawsuit. That counsel filed a joint motion (Doc. 86) by both defendants and motions by Alberta (Docs. 57, 71) that repeatedly references and incorporates the motions by Nikki's Vapor (Docs. 55, 70).

BBK filed a proof of service with this Court indicating that it served Alberta at its registered office in Canada on September 30, 2013. (Doc. 48.) Alberta acknowledges that it "was served with a copy of the Second Amended Complaint at its registered address in Alberta, Canada," (Doc. 57-1) but contends that it did not accept service or that the service was insufficient (Doc. 71 at 5). BBK also submitted a declaration from the Canadian attorney who hired the process server. (Doc. 69-1 at 2–4.) In that declaration

- 3 -

the attorney describes the applicable rules governing service on Alberta and attests that the service was performed in compliance with those rules. (*Id.*) Alberta does not contest that issue, but instead argues that the relevant issue is whether the service complied with the Federal Rules of Civil Procedure and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). (Doc. 71 at 4.)

## DISCUSSION

### I.     Supplemental Responses and Discovery

BBK's Motion for Leave to File and its requests for limited discovery on the issue of personal jurisdiction are denied. This Court earlier granted a stipulation by BBK and Nikki's Vapor to allow BBK to file a supplemental response with respect to Nikki's Vapor. (Docs. 63, 66, 68.) BBK now seeks leave to file a supplemental response concerning Alberta and a second supplemental response concerning Nikki's Vapor. (Doc. 81.) Nikki's Vapor and Alberta filed a joint response opposing that request. (Doc. 86.) BBK's request is denied because it has already had a full opportunity to brief its position.

In the Ninth Circuit, jurisdictional discovery should "ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union Local No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). As explained below, discovery is unwarranted because facts establishing jurisdiction have been sufficiently plead.

### II.    Service

Compliance with the Hague Convention is mandatory in cases involving service in a signatory country and it determines in part the validity of service. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Alberta is a Canadian company and the Parties agree that Canada is a signatory to the Hague Convention. The Hague Convention "regularized and liberalized service of process in international civil suits." *Id.* It did so principally by requiring each country to set up a Central Authority which must effectuate service when it is provided with documents that comply with its rules. *Id.*

In addition to establishing a new and uniform system of service, the Hague Convention also "shall not interfere with" other enumerated types of service "[p]rovided the State of destination does not object." Hague Convention, art. 10. Those other types of service include:

> b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
> c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

*Id.* Alberta states that, according to Canada's declaration at signing, the "normal procedure" should be service by a sheriff and that only "on occasion" has Canada not objected to the other forms of service. (Doc. 71 at 3.) In fact, the declaration quoted is only describing what the "normal procedure" will be when the Central Authority is used to affect formal service and Canada does not actually declare a preference or a requirement for such formal service. *Text of the Declarations of Canada*, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=status .comment&csid=392&disp=resdn (last visited Apr. 10, 2014).

Canada has not objected to the other types of service permitted under Article 10. *See id.* Alberta argues that those other forms of service have only been allowed "**on occasion**," when in fact the declaration states that "[o]n accession, Canada has not declared to object to methods of service of Article 10, sub-paragraphs *b)* and *c)*." *Id.* The word "accession" is not a typographical error or in any way a synonym for "occasion." Accession is defined as "the act by which one nation becomes party to an agreement already in force between other powers." *Accession - Definition*, Merriam-Webster, http://www.merriam-webster.com/dictionary/accession (last visited Apr. 10, 2014). In other words, Canada did not object to the methods of service in Article 10 when it became a party to the Hague Convention.

Article 10 permits direct service and BBK asserts that its method of direct service was in compliance with Canadian law. It corroborates that position by an affidavit from the Canadian lawyer who facilitated the service. Alberta only argues that service should have been through the Central Authority and does not argue that the service was otherwise impermissible under Canadian law. In this case, the service was adequate because it complied with Canadian law and was permissible under article 10 of the Hague Convention.

Defendant's contention that the service is not permissible under the Federal Rules of Civil Procedure is premised on the argument that the service was not in fact compliant with the Hague Convention. The Federal Rules of Civil Procedure do allow service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1). BBK's service on Alberta complied with that requirement by complying with the Hague Convention.

The Motion to Dismiss will not be granted based on a failure of service because BBK's service on Alberta was permissible under Canadian law, the Hague Convention, and the Federal Rules of Civil Procedure.

### III. Personal Jurisdiction

#### A. Law

In a motion to dismiss for lack of jurisdiction, the "party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). When the Court is resolving a motion to dismiss without holding an evidentiary hearing, plaintiff "need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Id.* A plaintiff's uncontroverted allegations from the complaint are taken as true and conflicts in affidavits are resolved in favor of the plaintiff. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

- 6 -

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)). Because Arizona's long-arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under Arizona law and federal due process are the same. *See* Ariz. R. Civ. P. 4.2(a); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). "The due process clause of the Fourteenth Amendment requires that the defendant must have minimum contacts with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1194 (9th Cir. 1988) (quoting *Data Disc*, 557 F.2d at 1287).

A court lacking general jurisdiction may nevertheless exercise specific jurisdiction over a party if: (1) the defendant purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directs conduct at the forum that has effects in the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)). If Plaintiff succeeds in establishing the first two elements of this test, the burden shifts to Defendants to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### 1. Purposeful Direction

It has long been established, that to assert specific jurisdiction, there must be in each case "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of

its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). More recently, however, the Supreme Court held that a court may also have specific jurisdiction over a defendant where the intended effects of the defendant's non-forum conduct were purposely directed at and caused harm in the forum state. *Calder v. Jones*, 465 U.S. 783, 788–90 (1984); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155–56 (9th Cir. 2006) (noting that purposeful direction analysis is appropriate when "all of [the defendant's] action identified by [the plaintiff] is action taking place outside the forum"); *Sinatra*, 854 F.2d at 1195 ("[T]he decisions of this court have interpreted the holdings of *Calder* and *Burger King* as modifying the purposeful availment rubric to allow 'the exercise of jurisdiction over a defendant whose only "contact" with the forum is the "purposeful direction" of a *foreign* act having *effect* in the forum state.'") (quoting *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir. 1986)); *but see Cybersell*, 130 F.3d at 420 (holding that the "effects" test did not "apply with the same force" in a trademark infringement and unfair competition action against a business entity in which the defendant's contact with Arizona arose only from infringing use of the plaintiff's trademarks on a passive website on the Internet).

"A purposeful direction analysis, [rather than a purposeful availment analysis], is most often used in suits sounding in tort." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 802). A purposeful direction analysis applies to this case because the underlying action, trademark infringement, sounds in tort. *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 720 (9th Cir. 2004).

Courts evaluate purposeful direction using the *Calder* "effects test." *See Brayton Purcell*, 606 F.3d at 1128. Under the "effects test," the defendant must allegedly have: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). All three elements of the test must be satisfied. *Schwarzenegger*, 374 F.3d at 805. "A finding of 'express aiming' . . . does not

mean 'that a foreign act with foreseeable effects in the forum states always gives rise to specific jurisdiction,'" *Dole*, 303 F.3d at 1112 (quoting *Bancroft*, 223 F.3d at 1087); *see also Cybersell*, 130 F.3d at 418 ("Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state.") (quotation omitted).

The "intentional" requirement is not a high bar, requiring only "an intent to perform an actual, physical act in the real world." *See Schwarzenegger*, 374 F.3d at 806.

The express aiming requirement is another way of saying that there must be "something more" than a foreseeability of an effect in the forum state. *Brayton Purcell*, 606 F.3d at 1129. A passive website alone cannot confer personal jurisdiction, but "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to confer personal jurisdiction." *Id.* (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)). The Ninth Circuit has made it clear that any intentional conduct must be "targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft*, 223 F.3d at 1087; *see also Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1146 (N.D. Cal. 2007) (holding that defendants who willfully infringed a plaintiff's copyright and who acted with the intent to produce movies for worldwide distribution, including in the forum state, sufficiently satisfied the purposeful direction requirement); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (holding that a defendant who "engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision" was enough "to demonstrate that the defendant directed his activity toward the forum state").

The Ninth Circuit has noted that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Cybersell*, 130 F.3d at 419 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). In *Cybersell*, the court went on to note that "the essentially passive nature of [the

defendant's] activity in posting a home page on the World Wide Web that allegedly used the service mark of [the plaintiff] does not qualify as purposeful activity invoking the benefits and protections of Arizona," *id.* at 418–19. In making its ruling, the court specifically noted that the defendant did nothing to encourage Arizona residents to visit the website, did not conduct business in Arizona, entered no contracts with Arizona residents, earned no income from Arizona, received no telephone calls from Arizona, and did not maintain an 800 telephone number. *Id.* at 419. The court indicated that there must be "something more" to "indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Id.* at 418.

The third prong of the *Calder* effects test is foreseeable harm, which is satisfied when the defendant "caused harm that it knew was likely to be suffered in the forum." *Brayton Purcell*, 606 F.3d at 1131. The forum state does not have to be the principle place of injury because this element can still be satisfied when the "'the bulk of the harm' occurs outside the forum." *Id.*

### 2. The Claim Arises Out of the Forum-Related Activities

After the plaintiff establishes purposeful direction under the three steps of the *Calder* effect test, the second requirement for personal jurisdiction is that the claim must arise out of the forum-related activities. This is a "but for" test that determines whether defendant's forum-related conduct caused the injury to plaintiff. *Rio Properties*, 284 F.3d at 1021.

### 3. The Exercise of Jurisdiction is Reasonable

Finally, jurisdiction must be reasonable, by "comport[ing] with traditional notions of fair play and substantial justice." *Id.* Courts determine reasonableness by balancing the following factors, none of which is individually dispositive:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in

      convenient and effective relief; and (7) the existence of an alternative forum.

*Id.*

  In analyzing personal jurisdiction generally, and the reasonableness inquiry in particular, the Ninth Circuit has noted that "litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state." *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993).

  **B.**  **Application**

    **1.**  **Nikki's Vapor**

  Here, BBK has the initial burden to show that Nikki's Vapor purposefully directed its conduct at Arizona. BBK alleges that Nikki's Vapor operates an interactive website which advertises and makes sales of products that infringe on BBK's trademark and trade dress. In these sales and promotional activities, Nikki's Vapor is directly competing with BBK both in Arizona and throughout the country. BBK experiences this injury to its sales and this infringement of its copyright in its home state of Arizona. In addition to the harm experienced in Arizona as a result of this nationwide infringement by Nikki's Vapor, BBK has also shown how the Nikki's Vapor has individually targeted its conduct toward Arizona. BBK states that it has received promotional emails in Arizona from Nikki's Vapor advertising the sale of the allegedly infringing products. In its supplemental motion, BBK showed how Nikki's Vapor participated in a sale of the products on JuicyeJuice.com. Specifically, Nikki's Vapor charged BBK's credit card for the sale and shipped the products from its address in Florida to BBK in Arizona.

  Turning to the elements of the *Calder* effect test, the conduct of Nikki's Vapor is intentional because it runs the websites, sends the advertising emails, and participates in the billing and shipment. Under the second element, those actions must be expressly aimed at Arizona and the case law shows that a passive website cannot support personal jurisdiction. However, Nikki's Vapor does not have a merely passive website with only information, but rather uses interactive websites to collect customer information and send

advertising emails and to sell allegedly infringing products in a market in which Plaintiff is its competitor. It also invites orders on the website with its name and at least participates in the sales made on another website. Nikki's Vapor is actively reaching out to and making sales through the internet, and that conduct is expressly aimed at Arizona because BBK is an Arizona company that experiences the negative impact on its sales and intellectual property here in Arizona. Furthermore, BBK has shown that Nikki's Vapor is doing business with a customer that Nikki's Vapor knows is in Arizona. All of this conduct meets the requirement of "something more," or express aiming at Arizona. Under the third *Calder* element, Nikki's Vapor knew that it was selling and advertising the contested products in Arizona. It also knew that any harm from its infringing activities would be felt by BBK in Arizona because that is where BBK is located.

Nikki's Vapor argues that it does not have sufficient contacts. In fact, in its Motion to Dismiss Nikki's Vapor originally asserted that it "has not sold any Juicy eJuice product in Arizona" and that it "has no contacts with Arizona." (Doc. 55 at 3, 5.) Nikki's Vapor's reply is more carefully worded. It does not deny that the emails or shipped products came from it. Instead it argues that the email advertisements to plaintiffs in Arizona and the shipment of Juicy eJuice products to Arizona should not be considered by this Court for several reasons.

First, Nikki's Vapor argues that these contacts are somehow invalid because BBK initiated them with the intent of establishing jurisdiction. As just addressed, all of the infringing sales and marketing direct harm at BBK's home in Arizona. In regards to the Arizona sales, Nikki's Vapor cites no authority for its position that they should be invalid because BBK requested them. This is not a case of Nikki's Vapor being inadvertently drawn into a market where it never intended to sell its product. Nikki's Vapor is involved in a worldwide outreach to market and sell its products both by itself and through franchises. It chooses to send marketing emails to target individuals who indicate an interest in its products even when the customer is in Arizona. It charges customers who buy products and ships products to them even when the customer is in Arizona. BBK has

made a prima facie showing that Nikki's Vapor is involved in nationwide sales that harm BBK and that Nikki's Vapor advertised and sold products to at least one customer that Nikki's Vapor knew was located in Arizona.

Second, Nikki's Vapor argues that these activities came from websites that do not bear its name or are not registered to it. This point is immaterial. Neither JuicyeJuice.com nor NikkisVaporBar.com is registered to Nikki's Vapor. However, it is plausible from the facts alleged that Nikki's operates NikkisVaporBar.com. After BBK visited JuicyeJuice.com, Nikki's Vapor allegedly sent BBK multiple promotional emails, and later billed and shipped the products ordered during a sale. The websites are both registered to a third defendant, but that does not mean that Nikki's Vapor Bar is not responsible for the business that it conducts and the contacts that it makes using those websites. Nikki's Vapor's conduct is relevant even if it is not the registered owner of the website or does not have its name included in the website address.

BBK has made a prima facie showing that the Nikki's Vapor's conduct satisfies the purposeful direction prong for specific jurisdiction by passing the *Calder* effects test. Under the second prong, BBK has also shown that its claims of trademark and trade dress infringement arise out of that conduct. There would be no injury to BBK but for Nikki's Vapor advertising and selling products bearing an allegedly infringing mark.

The burden shifts to Nikki's Vapor to establish why the exercise of personal jurisdiction over it would nonetheless be unreasonable. The seven factors do not support a conclusion that jurisdiction would be unreasonable in this case. First, Nikki's Vapor argues that it made no interjection into Arizona, but the Court has found that BBK made a prima facie showing otherwise. Second, Nikki's Vapor has not demonstrated anything that would make the typical burden of defending an out-of-state lawsuit exceptional in this case. Third and Fourth, it does not raise an issue about conflict of sovereignties or Arizona's interest in the case. The fifth element of efficient judicial resolution of the controversy and the sixth element of convenient and effective relief both favor Arizona. BBK is suing several entities with ties to various states and countries. It should not have

to file separate cases in each of those locations if this Court can exercise jurisdiction over all defendants and resolve the matter entirely in one action. Seventh, there is no suitable alternative forum. Nikki's Vapor suggests Delaware or Florida where it has citizenship, but that does not resolve the issue that the other defendants may not have citizenship or ties to those states.

BBK has met its prima facie burden of showing that Nikki's purposefully aimed its conduct at Arizona and that BBK's claims arise out of that forum-related conduct. Nikki's has not shown that the exercise of jurisdiction would be unreasonable. The Court will not grant Nikki's Vapor's Motion to Dismiss based on a lack of personal jurisdiction.

### 2.     Alberta

Alberta repeats many of the same arguments for a lack of personal jurisdiction and explicitly references the arguments and law found in the Motion to Dismiss and Reply of Nikki's Vapor. Although Alberta is in a somewhat different position than Nikki's Vapor, the Court also has personal jurisdiction over Alberta.

One of the differences is that Alberta concedes that it makes sales to Arizona. It states that these sales make up only a third of one percent of its total sales. However, Arizona is one of fifty states, and the United States is one of hundreds of countries in the world. It is unremarkable that Arizona would make up a small percentage of Alberta's worldwide sales. Alberta chose not to inform the Court about how many sales it makes to Arizona but admits to having "customers in Arizona." (Doc. 57-1.) The fact that Alberta has sales throughout the world, or more sales in other states or countries, does not affect the analysis here of whether Alberta has sufficient minimum contacts in order to support jurisdiction in Arizona.

BBK alleges in its complaint that Alberta sells smoking products including an e-cigarette and e-juice that are labeled with a "Juicy" mark. Alberta entirely avoids the issue of what products it sells or where it sells them. BBK alleges that Alberta sells its products through the website JuicyeJuice.com. Like Nikki's Vapor, Alberta points out that the website is registered to another defendant. As explained above, not being the

- 14 -

registered owner of the website does not preclude personal jurisdiction for actions taken through the website. Alberta repeatedly states in its Reply that BBK has not proven anything alleged in the Second Amended Complaint, but Alberta does not actually deny or contradict the allegations of that complaint. BBK only has the burden to make a prima facie showing. BBK's allegations from its complaint will be taken as true because they are not contradicted by Alberta.

Alberta's conduct qualifies as purposeful direction under the *Calder* effects test. Its sales of products allegedly infringing on an Arizona trademark are intentional under the first element. As to the second element, Alberta admits that it is involved in internet sales and that some of those sales are with customers in Arizona. As noted, the Court must accept as true the allegation in BBK's complaint that Alberta is selling its products through the JuicyeJuice.com website. Alberta argues that BBK attributed this conduct to Nikki's Vapor, but that does not mean that Alberta cannot be involved as well. The facts indicate that Alberta and Nikki's Vapor are closely tied. Alberta's declaration was notarized in Florida, the state where Nikki's Vapor is located and from where the shipment was sent. Alberta is half owned by Allan Mackintosh, the Chief Operating Officer of Nikki's Vapor. All of the websites are registered to another defendant. In the Second Amended Complaint, BBK alleges that all of the Defendants "are related to each other, are the alter egos of each other, are the agents of each other, or otherwise acted in concert with a common purpose sufficient enough to make each liable for the acts of the other." (Doc. 32 at 2.) Without making any specific findings regarding the exact status of these various Defendants, the Court finds that BBK has made a prima facie showing that both Alberta and Nikki's Vapor participated in the advertising emails and the sale to Arizona. This is in addition to the unspecified customers in Arizona that Alberta concedes to having. For all of these reasons, the second element of express aiming is sufficiently established. Under the third element of the *Calder* effects test, Alberta also knew that some of the harm from this conduct would be felt in Arizona because that is where BBK is located.

After consideration of purposeful direction, the rest of the analysis also supports the exercise of personal jurisdiction over Alberta. The second prong, "but for" test, is satisfied because the injuries again arise out of the forum related contacts. Under the third prong, Alberta fails to show why personal jurisdiction cannot reasonably be exercised in Arizona. Although the Court is more mindful that the burdens on foreign defendants are sometimes unique, they are not particularly strong in this case. Representatives from Alberta will not be forced to travel any further than those from Nikki's Vapor. As the Court has noted, they already share the same counsel and some of the same ownership or leadership with Nikki's Vapor. Although another suit may have been filed in Canada, this Court does not have the power to transfer this case there or consolidate both cases. As noted above, Defendants fail to identify another venue with a similar interest in the matter where all defendants would be subject to jurisdiction. Finally, the trademarks at issue in this case are registered with the USPTO, making courts in the United States the most reasonable, if not the only, place to seek their enforcement.

**IV.  Venue**

Nikki's Vapor makes a brief argument for dismissal based on improper venue that Alberta also incorporates into its motion. Their legal argument is that it is plaintiff's burden to establish venue and that dismissal for improper venue is appropriate where "plaintiff's chosen forum imposes a heavy burden on the defendant or the court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). Defendants failed to include the rest of the sentence with the remaining requirement from *Piper Aircraft*. That case actually approves of dismissal where there is both a heavy burden "and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Id.* The Court goes on to explain that "dismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law." *Id.* n.15.

As described in the reasonableness analysis above, this case does not create an unusual or heavy burden on either Defendant. Further, Defendants have not argued that

- 16 -

BBK has no reasons of convenience for bringing this suit in Arizona, BBK's home state. It makes no argument that this was done to harass or take advantage of favorable law. Their motions will not be granted because Defendants have not shown how *Piper Aircraft* supports dismissal in this case.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File supplemental responses (Doc. 81) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Nikki's Vapor Bar's Motion to Dismiss (Doc. 55) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Alberta's Motion to Dismiss (Doc. 57) is **DENIED.**

Dated this 29th day of April, 2014.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge